MELANIE POUNDS,                    )
                                   )
                Plaintiff,         )
                                   )
      v.                           )           1:24CV564
                                   )
ANDREW CANADA and                  )
GLOBALRX, INC.,                    )
                                   )
                Defendants.        )

**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

This case comes before the undersigned Magistrate Judge on a Motion to Withdraw as Attorney of Record (Docket Entry 16 ("Withdrawal Motion")) and a Motion for Sanctions against Plaintiff (Docket Entry 21 ("Sanctions Motion"); see also Docket Entry 22 ("Sanctions Brief")). (See Docket Entry dated May 8, 2025 (referring Withdrawal Motion); Docket Entry dated June 10, 2025 (referring Sanctions Motion).) Because the record shows that Plaintiff seriously abused the discovery process, the Court (A) should permit her counsel to withdraw, and (B) should impose both monetary and case-dispositive sanctions against Plaintiff.[1]

---

[1] The Sanctions Motion "request[s] that the Court . . . dismiss[ Plaintiff's] Complaint with prejudice . . . ." (Docket Entry 21 at 3.) Motions "to involuntarily dismiss an action," 28 U.S.C. § 636(b)(1)(A), fall beyond the authority of "a magistrate judge to hear and determine," id.; instead, the undersigned Magistrate Judge must "submit to a [district] judge . . . recommendations for the disposition . . . of any [such] motion," 28 U.S.C. § 636(b)(1)(B). "Given the dispositive nature of [the Sanctions M]otion and the interrelationship between [it and the
(continued...)

<u>INTRODUCTION</u>

Plaintiff commenced this action (through counsel) by filing a Complaint for Damages, which seeks "relief under 42 U.S.C. § 1981 and [via] common law claims for assault and battery against [D]efendants" (Docket Entry 1 ("Complaint") at 1; <u>see also</u> <u>id.</u> at 8 (reflecting filing by counsel)), premised on her alleged mistreatment during her employment with them, culminating in her firing (<u>see, e.g.,</u> <u>id.</u> at 1 (identifying "Defendant Andrew Canada [a]s the dominant corporate owner or officer of [Defendant] Global[R]x, Inc. and [its] alter ego . . . in his actions towards Plaintiff" (internal quotation marks omitted)), 2 ("Plaintiff was employed as a pharmaceutical broker for [Defendant] Global[R]x, Inc."), 3 ("Defendants' intentional discriminatory conduct against Plaintiff due to her race was continuous in nature until she was terminated on or about February 2, 202[3].")).[2]  Defendants

---

[1](...continued)
Withdrawal M]otion[], th[e undersigned Magistrate Judge will] consider[] . . . [both via r]ecommendation rather than [issuing] a separate [o]rder for the [non-dispositive Withdrawal M]otion." <u>Kandey Co., Inc. v. Barbera</u>, No. 13CV585A, 2014 WL 7530364, at *1 (W.D.N.Y. Dec. 16, 2014) (unpublished), <u>recommendation adopted</u>, 2015 WL 163000 (W.D.N.Y. Jan. 13, 2015) (unpublished).

[2]  The Complaint twice describes Plaintiff's firing as occurring in February 20<u>22</u> (<u>see</u> Docket Entry 1 at 3, 4), but another allegation in the Complaint suggests that description constitutes a scrivener's error (<u>see</u> <u>id.</u> at 4-5 (discussing "Plaintiff's last Employee Evaluation dated September 26, 2022, and written by [Defendant] Canada [which] gave [her] the highest evaluation of Excellent in five out of six rated categories" and, "[i]n the remaining category, . . . a rating of Good")).  Moreover,
                                                        (continued...)

-2-

answered (<u>see</u> Docket Entry 9), including by asserting a mitigation-of-damages defense (<u>see</u> <u>id.</u> at 6). The Court (per the undersigned Magistrate Judge) thereafter "adopt[ed the parties'] Joint Rule 26(f) Report" (Text Order dated Oct. 15, 2024 (adopting Docket Entry 12)), thereby establishing, inter alia, a discovery deadline of April 28, 2025 (<u>see</u> Docket Entry 12 at 2).

On December 2, 2024 (<u>see</u> Docket Entry 22-1 at 4), Plaintiff served initial disclosures, which "descri[be] . . . documents . . . that [she] ha[d] in [her] possession, custody, or control and may use to support [her] claims," Fed. R. Civ. P. 26(a)(1)(A)(ii), as including "[p]ayroll and paystubs . . . establishing lost wages" (Docket Entry 22-1 at 2) and "[b]anking documents establishing personal loans and bank fees incurred due to Plaintiff's lack of income and wrongful termination" (<u>id.</u>). Coordinately, as part of her "computation of each category of damages," Fed. R. Civ. P. 26(a)(1)(A)(iii), Plaintiff's initial disclosures list (among other things) "[l]ost wages for 10 months totaling $46,016.03 ($55,219.62/yr * 10/12)" (Docket Entry 22-1 at 3) and "[i]nterest

---

[2](...continued)
in her deposition, Plaintiff testified that "February '23[ was] when [she] was terminated by [Defendant] Canada" (Docket Entry 22-8 at 18), as confirmed by a contemporaneous text message she sent on "February 3rd, 2023" (<u>id.</u> at 67), stating "'He just fired me'" (<u>id.</u>). [Pin cites to Plaintiff's deposition transcript refer to the page numbers in the footer appended to that document upon its docketing in the CM/ECF system (not any original pagination).]

-3-

and other bank fees . . . due to Plaintiff's wrongful termination and lack of income" (id.).

To investigate the foregoing initial disclosures and in furtherance of the mitigation-of-damages defense, Defendants served Plaintiff with this interrogatory:

> Describe each and every employer, individual, or entity for whom you have performed any services for which you have been compensated since the end of your employment at [Defendant GlobalRx, Inc.], providing for each the full name of the employer, individual, or entity, their current address and telephone number, dates of the services for which you were compensated, the services you provided, the title of your position, and your compensation (including wages and benefits).

(Docket Entry 22-2 at 6; see also id. (asking Plaintiff to "[i]dentify any and all sources of income . . . from February 3, 2023 through the present, including the amounts and dates").) Plaintiff responded by reporting employment only with "Fiserv" (id.), which "[s]he began in December, 2023 and [for which she] earns $55,000 annually" (id.). Importantly, Plaintiff verified, after "being duly sworn, [] that she ha[d] read the foregoing [response] and that the same [wa]s true of her own knowledge" (id. at 15). (See id. (bearing Plaintiff's signature, as well as notarization of oath administration, both dated March 6, 2025).)

Defendants also asked Plaintiff to "[i]dentify all documents that [she] contend[ed] support [her] claim for damages as alleged in [the] Complaint." (Id. at 8.) To that interrogatory, Plaintiff responded "Attached." (Id. (bold font omitted).) Similarly, in

-4-

response to a request for production of "[a]ny and all documents that support [her] allegations of suffering any degree of financial harm based on the actions of either Defendant as a result of the conduct alleged in [the] Complaint" (id. at 13), Plaintiff stated "[s]ee attached" (id. (bold font omitted); see also id. at 11 (responding "N/A" to requests for production of "[a]ny and all documents showing income or payments provided from anyone other than [Defendant GlobalRx, Inc.] to [Plaintiff], including, but not limited to, paystubs[ and] Form W-2s . . . from January 1, 2022" and of "[a]ny documents . . . that in any way relate to or refute [her] alleged damages" (bold font omitted))). Along with those responses, "Plaintiff produced, among others, the following documents" (Docket Entry 22 at 4), as summarized by Defendants:

- A single paystub from Fiserv Solutions LLC (Exhibit C), which indicates:

    - A pay period beginning 12/15/2023 and ending 12/30/2023;

    - A check date of December 30, 2023;

    - Gross Pay of $1,892.05 and Net Pay of $1,679.58; and

    - A direct deposit into account *0253 at the State Employees Credit Union ("SECU["])

- A Form W-2 Wage and Tax Statement for 2023 issued by Fiserv Solutions LLC to Plaintiff (Exhibit D), which indicates:

    - Fiserv Solutions LLC provided Plaintiff with "Wages, tips, other comp." in the amount of $1,892.05 in 2023

-5-

- A Form W-2 Wage and Tax Statement for 2024 issued by Fiserv Solutions LLC to Plaintiff (Exhibit E), which indicates:

  - Fiserv Solutions LLC provided Plaintiff with "Wages, tips, other comp." in the amount of $54,083.85 in 2024

- Account Statements of Plaintiff at [SECU] for the period of March 3, 2022 through January 3, 2024 for her checking account ending in **0253 (excerpts attached as Exhibit F), which identified the following bi-weekly deposits in the Transaction Description:

  - Posted Date 9/14/23, Effective Date 9/15/23 – a deposit of $1,679.58 from "LIBERTY SOLUTIONS"

  - Posted Date 9/28/23, Effective Date 9/29/23 – a deposit of $1,509.95 from "BESTBUY LLC"

  - Posted Date 10/12/23, Effective Date 10/13/23 – a deposit of $3,885.81 from "Discover Advance Epay"

  - Posted Date 10/30/23, Effective Date 10/31/23 – a deposit $1,996.69 from "MEMBER DEPOSIT."

  - Posted Date 11/14/23, Effective Date 11/15/23 – a deposit of $885.82 from "INDUSTRIAL CONNE DIRECT DEPOSIT"

  - Posted Date 11/29/23, Effective Date 11/30/23 – a deposit of $1,996.69 from a "MEMBER DEPOSIT"

  - Posted Date 12/14/23, Effective Date 12/14/23 – a deposit of $3,885.81 from a "MEMBER DEPOSIT"

  - Posted Date 12/28/23, Effective Date 12/29/23 – a deposit of $1,679.52 from "FISERV SOLUTIONS PAYROLL"

(Id. at 4-5 (bracketed font information and stray parenthesis omitted) (citing Docket Entries 22-3 through 22-6).)

-6-

On April 1, 2025, Plaintiff appeared for her deposition and testified under oath. (See Docket Entry 22-8 at 1-2; see also id. at 3 (setting out Plaintiff's acknowledgment of her oath).) During the deposition, when confronted with text communications stating that she gained employment with Fiserv on August 17, 2023, with a start date of September 5, 2023, Plaintiff expressly denied that she "in fact start[ed] on September the 5th at Firserv" (id. at 62), and – while reviewing the Fiserv paystub she produced in discovery for the period ending December 30, 2023 (see id. at 63) – Plaintiff expressly denied that she received "any compensation from Firserv prior to December 30th, 2023" (id.). (See id. at 62-63; see also id. at 11 ("I think I started in November as far as the training. . . . Where they set me free to, like, actually work, I think it was January, in the new year, maybe December.").) Plaintiff also examined the W-2 form she produced in discovery which gave her total wages from Fiserv for 2024 as $54,083.85 and confirmed the accuracy of that wage figure. (See id. at 64; see also id. at 12 (testifying that her salary at Fiserv "was very close" to her salary at Defendant GlobalRx, Inc.), 64 (agreeing that her Fiserv wages totaled "just a little bit more than what [she] w[as] making when [she] left [Defendant GlobalRx, Inc.]").)

Additionally, in regard to the SECU account statements she produced in discovery (see id. at 14), Plaintiff expressly denied any knowledge of the source of funds for the "October 31st, 2023,

. . . member deposit in the amount of $1,996.69" (id.), the "member deposit on November 29th for $1,996.69" (id. at 15), and the "12/14 . . . member deposit for $3,885.81" (id.).  (See id. at 14-15.) Plaintiff then provided this explanation for her lack of knowledge of the source of those funds:

> I didn't have any income during this time period, so I was moving money from one account, one credit card one -- whatever I could do to come up with money to try to pay my bills.  I would pull money from HOAs, personal loans, various places to pay the bills or make deposit [sic]. . . .  I got money from my 401(k).  So did my husband.
>
> So any of these deposits, I can't recolate [sic] or recall where they came from.
>
> . . . .
>
> The member deposit, it may have been cash. . . .  Because I had to use all of my resources to try and pay my bills.
>
> . . . .
>
> Like if the loan is in my husband's name and he goes and gets it or if I'm taking money from a credit card and applying it over here, I would take it and move it in the account.  I didn't have money, so whatever resources that I had -- that's what I'm saying.  I don't recall where the actual money or transactions came from, because clearly I didn't have money.

(Id. at 15 (emphasis added).)

Fiserv subsequently "produced [to Defendants] in response to [a s]ubpoena [various] original [business] records or true copies of [business] records" (Docket Entry 22-10 at 1; see also Docket Entry 22 at 5 ("On March 17, 2025, Defendants served Fiserv Solutions LLC with a Subpoena Duces Tecum, asking it to produce copies of Plaintiff's employment records by March 25, 2025.")), 8-9

-8-

("On April 29 and 30, 2025, the first two days after discovery closed, Fiserv produced documents . . . .")), including:

1) Plaintiff's W-2 form for 2023 (Docket Entry 22-10 at 2), showing that Fiserv paid her "Wages, tips, [and] other comp." (id.), in the amount of "[$]26073.79" (id.);

2) Plaintiff's W-2 form for 2024 (id. at 4), showing that Fiserv paid her "Wages, tips, [and] other comp." (id.), in the amount of "[$]94083.85" (id.);

3) Plaintiff's paystub for the period of "09/01/2023" through "09/15/2023" (id. at 6), showing that, on or about "09/15/2023" (id.), Fiserv paid her – via deposit into her "SECU" account ending in "0253" (id.) – "Net Pay [of $]1,679.58" (id.);

4) Plaintiff's paystub for the period of "09/16/2023" through "09/30/2023" (id. at 7), showing that, on or about "09/30/2023" (id.), Fiserv paid her – via deposit into her "SECU" account ending in "0253" (id.) – "Net Pay [of $]1,509.95" (id.);

5) Plaintiff's paystub for the period of "10/01/2023" through "10/15/2023" (id. at 8), showing that, on or about "10/13/2023" (id.), Fiserv paid her – via deposit into her "SECU" account ending in "0253" (id.) – "Net Pay [of $]3,885.81" (id.);

6) Plaintiff's paystub for the period of "10/16/2023" through "10/31/2023" (id. at 9), showing that, on or about "10/31/2023" (id.), Fiserv paid her – via deposit into her "SECU" account ending in "0253" (id.) – "Net Pay [of $]1,996.69" (id.);

-9-

7) Plaintiff's paystub for the period of "11/01/2023" through "11/15/2023" (id. at 10), showing that, on or about "11/15/2023" (id.), Fiserv paid her – via deposit into her "SECU" account ending in "0253" (id.) – "Net Pay [of $]3,885.82" (id.);

8) Plaintiff's paystub for the period of "11/16/2023" through "11/30/2023" (id. at 11), showing that, on or about "11/30/2023" (id.), Fiserv paid her – via deposit into her "SECU" account ending in "0253" (id.) – "Net Pay [of $]1,996.69" (id.);

9) Plaintiff's paystub for the period of "12/01/2023" through "12/15/2023" (id. at 12), showing that, on or about "12/15/2023" (id.), Fiserv paid her – via deposit into her "SECU" account ending in "0253" (id.) – "Net Pay [of $]3,885.81" (id.);

10) Plaintiff's paystub for the period of "12/16/2023" through "12/31/2023" (id. at 13), showing that, on or about "12/29/2023" (id.), Fiserv paid her – via deposit into her "SECU" account ending in "0253" (id.) – "Net Pay [of $]1,996.69" (id.), as well as that, for "YTD," she received from Fiserv total "Gross Pay" in the amount of "[$]26,829.56" and total "Net Pay" in the amount of "[$]20,837.05" (id.); and

11) Plaintiff's paystub for the period of "12/16/2024" through "12/31/2024" (id. at 37), showing that, for "YTD," she received from Fiserv total "Gross Pay" in the amount of "[$]95,023.41" and total "Net Pay" in the amount of "[$]75,714.26" (id.).

-10-

Promptly upon receiving those genuine business records from Fiserv demonstrating that Plaintiff had tendered to Defendants falsified initial disclosures, perjured interrogatory responses, fabricated documents, and perjured deposition testimony, "Defendants' counsel called Plaintiff's counsel and informed him of their discovery."  (Docket Entry 22 at 11; see also id. ("Defendants[' counsel] provided [Plaintiff['s counsel] with a copy of the records from Fiserv . . . .").)  A short time later, on May 7, 2025, Plaintiff's counsel filed the Withdrawal Motion (see Docket Entry 16 at 3), which he served on Plaintiff, by certified mail, on May 15, 2025 (see Docket Entry 20 at 1; Docket Entry 20-1 at 1-6; Docket Entry 24 at 1-2).  According to the Withdrawal Motion, "[Plaintiff's] counsel cannot continue to represent Plaintiff pursuant to Rule 1.16(b) of the North Carolina Rules of Professional Conduct."  (Docket Entry 16 at 1.)  Plaintiff did not respond to the Withdrawal Motion.  (See Docket Entries dated May 7, 2025, to present (reflecting no responsive filing).)

Defendants, in turn, filed the Sanctions Motion "request[ing] that the Court issue sanctions against Plaintiff including, but not limited to, dismissing [the] Complaint with prejudice, awarding Defendants their reasonable attorneys' fees and costs related to Plaintiff's fraudulent and dishonest conduct during discovery, and [granting] such other relief as the Court determines in its discretion."  (Docket Entry 21 at 3; see also id. at 5 (documenting

-11-

service and filing date of May 16, 2025).)  Plaintiff did not respond to the Sanctions Motion.  (See Docket Entries dated May 16, 2025, to present (reflecting no responsive filing).)

DISCUSSION

As detailed in the Introduction, Plaintiff's initial disclosures assert that she incurred $46,016.03 of lost wages in the ten months from her firing by Defendants in early February 2023 until her receipt of a paycheck from Fiserv in late December 2023. (See Docket Entry 22-1 at 3.)  That disclosure obligated Plaintiff to "make available for inspection and copying as under [Federal] Rule [of Civil Procedure] 34 the documents . . . on which [that] computation [wa]s based, including materials bearing on the nature and extent of [the] injuries [she] suffered[.]"  Fed. R. Civ. P. 26(a)(1)(A)(iii).  Interrogatories served by Defendants also required Plaintiff (A) to reveal all her jobs and compensation "since the end of [her] employment at [Defendant GlobalRx, Inc.]" (Docket Entry 22-2 at 6), as well as "all sources of income . . . [she] received from February 3, 2023 through the present, including the amounts and dates of the same" (id.), and (B) to "[i]dentify all documents that [she] contend[ed] support [her] claim for damages" (id. at 8).  Along with those interrogatories, Defendants served Plaintiff with requests for production of "[a]ny and all documents showing income or payments provided from anyone other than [Defendant GlobalRx, Inc.] to [Plaintiff], including, but not

-12-

limited to, paystubs[ and] Form W-2s" (<u>id.</u> at 11), "[a]ny documents
. . . that in any way relate to or refute [her] alleged damages"
(<u>id.</u>), and "[a]ny and all documents that support [her] allegations
of suffering any degree of financial harm" (<u>id.</u> at 13). In
response to those interrogatories and document requests (and to
meet her obligation to produce documents substantiating the lost-
wages claimed in her damages disclosure), Plaintiff (as the
Introduction details) (A) swore that, after her firing in February
2023, she received no income until she began working for Fiserv in
December 2023 (<u>see</u> <u>id.</u> at 6), and (B) served documents (i) showing
her post-firing compensation in 2023 consisted of one payment of
less than $2,000 from Fiserv in late December 2023 (<u>see</u> Docket
Entry 22-3 at 1; Docket Entry 22-4 at 1), and (ii) attributing to
other sources the regular, large deposits into her SECU account
during the period of September 2023 through December 2023 (<u>see</u>
Docket Entry 22-6 at 45, 47, 51, 54, 59, 62, 66).

Plaintiff's damages disclosure came with a certification that
"it [wa]s complete and correct," Fed. R. Civ. P. 26(g)(1)(A), and
her related discovery responses came with a certification that they
were "consistent with the[ Federal R]ules [of Civil Procedure],"
Fed. R. Civ. P. 26(g)(1)(B)(i), "not interposed for any improper
purpose," Fed. R. Civ. P. 26(g)(1)(B)(ii), and not "unreasonable,"
Fed. R. Civ. P. 26(g)(1)(B)(iii); <u>see also</u> Fed. R. Civ. P. 26
advisory committee's note to 1983 amendment, Subdiv. (g)

-13-

("[Federal] Rule [of Civil Procedure] 26(g) imposes an affirmative duty to engage in pretrial discovery in a responsible manner that is consistent with the spirit and purpose of [Federal] Rules [of Civil Procedure] 26 through 37."). In addition, as "[a] party who ha[d] made a disclosure under [Federal] Rule [of Civil Procedure] 26(a)[ and] who ha[d] responded to an interrogatory[ and a] request for production," Fed. R. Civ. P. 26(e)(1), Plaintiff bore an ongoing duty to "correct [her] disclosure [and] response[s] . . . in a timely manner if [she] learn[ed] that in some material respect [they were] incomplete or incorrect," id.; see also, e.g., Wondimante v. Assefa, Civ. Action No. 2004-3718, 2006 WL 8456990, at *12 (D. Md. Oct. 12, 2006) (unpublished) ("Pursuant to Fed[eral] R[ule of] Civ[il] P[rocedure] 26(e) a party is under a continuing obligation to supplement or correct required disclosures and discovery responses."). As documented in the Introduction and not contested by Plaintiff, the record establishes that – contrary to the certifications accompanying the damages disclosure and related discovery responses she served on Defendants – Plaintiff lied about her lost wages and fabricated a pay-stub, tax forms, and bank statements to bolster her lies. (See Docket Entry 22-10 at 2, 4, 6-13, 37.) Moreover, rather than correct her lies and fabrications in a timely manner (as required), the uncontested record shows that Plaintiff doubled-down on them by giving perjured deposition testimony. (See Docket Entry 22-8 at 11, 14-15, 62-64.)

-14-

The Sanctions Brief correctly observes that "[c]ourts have several avenues for imposing sanctions for such misconduct." (Docket Entry 22 at 13.) Among those avenues, the Sanctions Brief directs the Court "[f]irst[ to Federal] Rule [of Civil Procedure] 37[, which] outlines sanctions for discovery abuses." (Id.) In particular, the Sanctions Brief argues:

> [Federal] Rule [of Civil Procedure] 37 treats a merely "evasive" answer to a discovery request as a "failure" to answer that request, Fed. R. Civ. P. 37(a)(4), and a failure to answer is sanctionable under [Federal] Rule [of Civil Procedure] 37(c)(1)(C), which itself incorporates the orders listed in [Federal] Rule [of Civil Procedure] 37(b)(2)(A). Of those, two are dismissing the action or proceeding (subpart (v)) and rendering a default judgment against the disobedient party (subpart (vi)). By creating an elaborate scheme of fraudulent and fake documents and presenting them in discovery as if they were true and accurate, Plaintiff far exceeded the "evasive" threshold that triggers [sanctions under Federal] Rule [of Civil Procedure] 37.

(Docket Entry 22 at 13.)

The first provision within Federal Rule of Civil Procedure 37 invoked therein by Defendants does state that "an evasive or incomplete disclosure . . . or response must be treated as a failure to disclose . . . or respond," Fed. R. Civ. P. 37(a)(4), but only "[f]or purposes of th[at] subdivision (a)," id.,[3] not for purposes of imposing "sanction[s] under [Federal] Rule [of Civil Procedure 37(c)(1)(C)" (Docket Entry 22 at 13). However, Federal

---

[3] Subdivision (a) of Federal Rule of Civil Procedure 37 permits "a party [to] move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1).

-15-

Rule of Civil Procedure 37(c)(1)(C) – and its authorization for the Court to "impose other appropriate sanctions, including any of the orders listed in [Federal] Rule [of Civil Procedure] 37(b)(2)(A)(i)-(vi)," Fed. R. Civ. P. 37(c)(1)(C), such as "dismissing the action," Fed. R. Civ. P. 37(b)(2)(A)(v) – remains an appropriate avenue for addressing Plaintiff's misconduct. To reach that conclusion, the Court should begin by examining the full text of Federal Rule of Civil Procedure 37(c)(1), which states:

> If a party <u>fails to provide information</u> or identify a witness <u>as required by</u> [Federal] Rule [of Cvil Procedure] <u>26(a) or (e)</u>, the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. <u>In addition to or instead of this [exclusion] sanction</u>, the court, on motion and after giving an opportunity to be heard:
>
> (A) <u>may order payment of the reasonable expenses, including attorney's fees, caused by the failure</u>;
>
> (B) may inform the jury of the party's failure; and
>
> (C) <u>may impose other appropriate sanctions, including any of the orders listed in [Federal] Rule [of Civil Procedure] 37(b)(2)(A)(i)-(vi)</u>.

Fed. R. Civ. P. 37(c)(1) (emphasis added).

Here (per the prior discussion), Plaintiff "fail[ed] to provide information . . . as required by [Federal] Rule [of Civil Procedure] 26(a) or (e)," <u>id.</u>, including (at least) the following:

1) a "complete and correct," Fed. R. Civ. P. 26(g)(1)(A), "computation of [Plaintiff's lost-wages] category of damages," Fed. R. Civ. P. 26(a)(1)(A)(iii);

2) a "correct[ion to Plaintiff's incorrect lost-wages] disclosure," Fed. R. Civ. P. 26(e)(1), served "in a timely manner," Fed. R. Civ. P. 26(e)(1)(A);

3) a "complete and correct," Fed. R. Civ. P. 26(g)(1)(A), set of "documents . . . on which [Plaintiff's lost-wages] computation is based," Fed. R. Civ. P. 26(a)(1)(A)(iii);

4) a "correct[ion to Plaintiff's incomplete and incorrect] disclosure," Fed. R. Civ. P. 26(e)(1), of "documents . . . on which [her lost-wages] computation is based," Fed. R. Civ. P. 26(a)(1)(iii), served "in a timely manner," Fed. R. Civ. P. 26(e)(1)(A);

5) a "correct[ion to Plaintiff's perjurious] . . . response[s]," Fed. R. Civ. P. 26(e)(1), to the interrogatories requesting an accounting of her post-firing, employment income (see Docket Entry 22-2 at 6), served "in a timely manner," Fed. R. Civ. P. 26(e)(1)(A), which makes those responses "consistent with the[ Federal R]ules [of Civil Procedure]," Fed. R. Civ. P. 26(g)(1)(B)(i), no longer "interposed for any improper purpose," Fed. R. Civ. P. 26(g)(1)(B)(ii), and no longer "unreasonable," Fed. R. Civ. P. 26(g)(1)(B)(iii); and

6) a "correct[ion to Plaintiff's incomplete and fabricated] . . . response[s]," Fed. R. Civ. P. 26(e)(1), to the requests for production of "documents that support [her] allegations of suffering any degree of financial harm" (Docket Entry 22-2 at 13),

-17-

that "show[] income or payments provided by anyone other than [Defendant GlobalRx, Inc.] to [her], including . . . paystubs[ and] Form W-2s" (id. at 11), and that "relate to or refute [her] alleged damages" (id.), served "in a timely manner," Fed. R. Civ. P. 26(e)(1)(A), which makes those responses "consistent with the[ Federal R]ules [of Civil Procedure]," Fed. R. Civ. P. 26(g)(1)(B)(i), no longer "interposed for any improper purpose," Fed. R. Civ. P. 26(g)(1)(B)(ii), and no longer "unreasonable," Fed. R. Civ. P. 26(g)(1)(B)(iii).

For those failures, pursuant to the "[Sanctions M]otion [on which Plaintiff had] an opportunity to be heard," Fed. R. Civ. P. 37(c)(1), the Court (A) "may order payment of the reasonable expenses, including attorney's fees, caused by the failure[s]," Fed. R. Civ. P. 37(c)(1)(A), and (B) "may impose other appropriate sanctions, including any of the orders listed in [Federal] Rule [of Civil Procedure] 37(b)(2)(A)(i)-(vi)," Fed. R. Civ. P. 37(c)(1)(C), which includes "dismiss[al of] the action," Fed. R. Civ. P. 37(b)(2)(A)(v).[4] Indeed, the United States Court of Appeals for the Fourth Circuit has recognized the propriety of such sanctions

_____

[4] As quoted previously, in developing the Sanctions Motion via the Sanctions Brief, Defendants explicitly sought "sanction[s] under [Federal] Rule [of Civil Procedure] 37(c)(1)(C) . . . ." (Docket Entry 22 at 13.) The undersigned Magistrate Judge additionally will ensure that the Clerk sends a copy of this Recommendation (and a notice of the right to file objections thereto) not just to Plaintiff's counsel but also to Plaintiff, thereby providing her with a further "opportunity to be heard," Fed. R. Civ. P. 37(c)(1), before the Court imposes any sanctions.

-18-

in situations of this sort, "when a party fails to disclose evidence helpful to an opposing party." <u>Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.</u>, 318 F.3d 592, 595 n.2 (4th Cir. 2003) (emphasis omitted) (citing, inter alia, 7 <u>Moore's Federal Practice</u> § 37.60[2][b] (3d ed. 2002) (describing such sanctions as "effective means to discipline parties who might be tempted not to disclose evidence that would be helpful to their opponents")); <u>see also</u> Fed. R. Civ. P. 37 advisory committee's note to 1993 amendment, Subdiv. (c) ("Preclusion of evidence is not an effective incentive to compel disclosure of information that, being supportive of the position of the opposing party, might advantageously be concealed by the disclosing party.").

Given that authority and the above-discussed, record evidence making it "abundantly clear . . . that Plaintiff has flagrantly and unremittingly violated the rules governing discovery," <u>United States ex rel. Rangarajan v. Johns Hopkins Health Sys. Corp.</u>, 262 F. Supp. 3d 259, 274 (D. Md. 2017), <u>aff'd</u>, 917 F.3d 218 (4th Cir. 2019), "[t]he only question that remains is – what is the appropriate remedy," <u>id.</u> Put another way, the Court must determine whether, under Federal Rule of Civil Procedure 37(c)(1), Plaintiff's undisputed misconduct warrants (as Defendants have requested) "dismiss[al of the] Complaint with prejudice[ and an] award[ to] Defendants [of] their reasonable attorneys' fees and costs related to Plaintiff's fraudulent and dishonest conduct

-19-

during discovery" (Docket Entry 21 at 3). To aid the Court in making that determination, "[t]he Fourth Circuit has developed a four-part test for a district court to use when determining what sanctions to impose under [Federal] Rule [of Civil Procedure] 37." Anderson v. Foundation for Advancement, Educ. & Emp. of Am. Indians, 155 F.3d 500, 504 (4th Cir. 1998).

More specifically, to evaluate the propriety of the monetary and case-dispositive sanctions requested by Defendants in the Sanctions Motion, "[t]he [C]ourt must determine (1) whether [Plaintiff] acted in bad faith, (2) the amount of prejudice that noncompliance caused [Defendants], (3) the need for deterrence of the particular sort of non-compliance, and (4) whether less drastic sanctions would have been effective." Id. (citing Wilson v. Volkswagen of Am., Inc., 561 F.2d 494, 503-05 (4th Cir. 1977)); accord, e.g., Beach Mart, Inc v. L&L Wings, Inc., 784 F. App'x 118, 124 (4th Cir. 2019).[5] Those four factors all weigh in favor of the

---

[5] The above-quoted factors generally overlap with the six factors the Fourth Circuit has decreed a district court must consider "[b]efore exercising its inherent power to dismiss a case based on wrongdoing of a party in the judicial process," Projects Mgmt. Co. v. DynCorp Int'l LLC, 734 F.3d 366, 373 (4th Cir. 2013). Compare id. at 373-74, with Anderson, 155 F.3d at 504; see also Beach Mart, 784 F. App'x at 124 ("Before entering a dismissal order pursuant to th[eir] inherent authority, [district] courts consider similar factors to those under [Federal] Rule [of Civil Procedure] 37."). Most notably, the factors district courts must consider before dismissing a case based on the their inherent power include: (1) "the degree of the wrongdoer's culpability," Projects Mgmt., 734 F.3d at 373 (internal quotation marks omitted); see also id. at 373-74 (requiring separate consideration of "extent of the client's
(continued...)

Court's entry of an order (A) directing Plaintiff to pay Defendants' reasonable expenses, including attorneys' fees, incurred due to her misconduct, and (B) dismissing this action.

The first factor, i.e., "whether [Plaintiff] acted in bad faith," Anderson, 155 F.3d at 504, turns on whether she "acted knowingly with intent to gain an advantage in the litigation," For Life Prods., LLC v. Virox Techs. Inc., No. 1:20CV16, 2022 WL 1670097, at *8 (W.D. Va. May 25, 2022) (unpublished). As detailed earlier, the record conclusively shows that "[P]laintiff has repeatedly demonstrated [her] bad faith in this case," id.; "[i]ndeed, it is undisputed that . . . [she served numerous] fabricated [documents]," id. (emphasis omitted). Further, "the record evidence convincingly points to bad faith," id. at *9, based on "the fabrications' focus," id. In that regard (as the Introduction outlines), the fabricated documents Plaintiff produced in discovery (like her interrogatory responses and deposition testimony) hid the material fact that, during the ten-month period

---

⁵(...continued)
blameworthiness if the wrongful conduct is committed by its attorney" (internal quotation marks omitted)); (2) "the prejudice to the victim," id. at 374 (internal quotation marks omitted); and (3) "the availability of other sanctions to rectify the wrong by punishing culpable persons, compensating harmed persons, and deterring similar conduct in the future," id. (internal quotation marks omitted); see also id. (requiring separate consideration of "prejudice to the judicial process and the administration of justice" and "public interest" (internal quotation marks omitted)). Due to that overlap, this Recommendation draws on authority assessing sanctions under the inherent power of a district court, as well as Federal Rule of Civil Procedure 37.

-21-

from February through December 2023, she received nearly 14 times more income than she reported receiving when she disclosed her damages computation for lost wages.  That circumstance "further underscores that [Plaintiff's] actions were not just purposeful but clearly tailored to gain a litigation advantage."  Id.  Simply put, "there is no doubt that [Plaintiff] willfully fabricated evidence. This [bad-faith] factor therefore cuts in favor of dismissal." Id.; see also, e.g., Beach Mart, 784 F. App'x at 124-25 (concluding that "record plainly supports the district court's conclusion that [party] acted with a high degree of culpability" where party presented "false deposition testimony" and "withh[eld a material document] and other important information during discovery"); Harris v. Aramark, Nos. 1:10CV72, 1:10CV228, 2011 WL 10618725, at *1-2 (M.D.N.C. Dec. 5, 2011) (unpublished) (Eagles, J.) (describing "perjury or the fabrication of evidence" as examples of "most egregious misconduct" and adopting dismissal as proper sanction for the plaintiff's "'fraud on the court' because [his conduct] consist[ed] of the filing of fabricated documents and the making of false testimony" (some internal quotation marks omitted)), aff'd, 470 F. App'x 150 (4th Cir. 2012).[6]

---

[6] "It is not contended that [Plaintiff's ] attorney[ is] responsible for creating the fabricated evidence."  For Life Prods., 2022 WL 1670097, at *9.  Nor could Plaintiff so contend:

> It is clear that it was Plaintiff who [swore to the false, lost-wages] narrative contained in her
> (continued...)

-22-

The second factor for the Court's consideration concerns "the amount of prejudice that [Plaintiff's] noncompliance [with her discovery duties] caused [Defendants]," Anderson, 155 F.3d at 504. This "factor also supports dismissal of this case. After all, dishonest litigants have a distinct advantage over their honest adversaries, for the victimized opponent winds up consuming substantial resources to respond to and undo the victimizer['s] lies and distortions." Tesar v. Potter, Civ. Action No. 9:05-956, 2007 WL 2783386, at *8 (D.S.C. Sept. 21, 2007) (unpublished) (internal brackets, ellipsis, and quotation marks omitted). True to that truism, the record here (as detailed in the Introduction) confirms that, due to Plaintiff's misconduct, "Defendants have been forced to expend a tremendous amount of time, effort, and expense in the discovery process and motions practice," Rangarajan, 262 F. Supp. 3d at 275. For example, in addition to the resources Defendants wasted (A) reviewing Plaintiff's false/fabricated, damages-related disclosure and discovery responses, (B) deposing

_____

[6](...continued)
[interrogatory responses and deposition testimony]. It was Plaintiff who failed to turn over to her counsel [authentic] documents that were clearly responsive to discovery requests and it is Plaintiff who misrepresented the [fabricated documents she produced in discovery as authentic in her deposition testimony] . . . . While her counsel may have employed questionable judgment in not more thoroughly probing as to what Plaintiff stated [and provided to him] . . ., it appears that Plaintiff has been and continues to be the prime offender.

Rangarajan, 262 F. Supp. 3d at 275 (internal footnote omitted).

-23-

her about those fraudulent items, and (C) preparing the Sanctions Motion and Sanctions Brief, "Defendant[s] w[ere] forced to conduct lengthy and unnecessary third-party discovery . . . subpoenaing the records of [Plaintiff's new employer] . . ., in order to fully expose [her] dishonesty," Tesar, 2007 WL 2783386, at *8. Plainly stated, at significant cost to Defendants, "Plaintiff's conduct . . . interfered with and obstructed [their] constitutionally-protected rights to a fair trial and complete and truthful discovery, and this [prejudice] factor supports dismissal of [this] case." Id.; see also For Life Prods., 2022 WL 1670097, at *9 (concluding that "[t]he defendants [we]re also prejudiced" where the plaintiff "lied about material events in th[e] case").[7]

Turning to the third factor the Court must consider in selecting the proper sanction for Plaintiff's failure to comply with her obligations under Federal Rule of Civil Procedure 26(a) and (e) – which focuses on "the need for deterrence of [her]

_____

[7] The above-noted prejudice also warrants entry of an "order [mandating] payment [by Plaintiff] of [Defendants'] reasonable expenses, including attorney's fees, caused by [her] failure [to comply with Federal Rule of Civil Procedure 26(a) and (e)]," Fed. R. Civ. P. 37(c)(1)(A). See, e.g., For Life Prods., 2022 WL 1670097, at *1 ("Because of the breathtaking nature and extent of the [plaintiff's] misrepresentations, and their potential effect on the litigation and the administration of justice, I will dismiss the plaintiff's action with prejudice as a sanction and award attorneys' fees and costs." (emphasis added)); see also Taylor v. Mayor & City Council of Berlin, 194 F.R.D. 512, 514 (D. Md. 2000) ("recogniz[ing] that [district court] has broad discretion to order the imposition of reasonable expenses, including attorney's fees, as a sanction for the violation of the Federal Rules of Civil Procedure" (citing Fed. R. Civ. P. 37(c)(1))).

-24-

particular sort of non-compliance," <u>Anderson</u>, 155 F.3d at 504 – the Court should start by acknowledging that "[f]alsifying evidence to secure a court victory undermines the most basic foundations of our judicial system," <u>For Life Prods.</u>, 2022 WL 1670097, at *9 (internal brackets and quotation marks omitted); <u>see also</u> <u>id.</u> at *8 ("The fabrication of evidence is a near-classic example of an abuse of the judicial process." (internal quotation marks omitted)).  As the Fourth Circuit has explained:

> Our adversary system for the resolution of disputes rests on the unshakable foundation that truth is the object of the system's process which is designed for the purpose of dispensing justice. . . .  [T]he process depends on the adversarial presentation of evidence, precedent and custom, and argument to reasoned conclusions — all directed with unwavering effort to what, in good faith, is believed to be true on matters material to the disposition.  Even the slightest accommodation of deceit or a lack of candor in any material respect quickly erodes the validity of the process.  As soon as the process falters in that respect, the people are then justified in abandoning support for the system in favor of one where honesty is preeminent.

<u>United States v. Shaffer Equip. Co.</u>, 11 F.3d 450, 457 (4th Cir. 1993); <u>see also</u> <u>id.</u> at 457-58 ("The system can provide no harbor for clever devices to divert the search [for the truth] . . . or cover up that which is necessary for justice in the end.").

And Plaintiff's malfeasance (documented in the Introduction) involved "not just the submission of fabricated evidence.  [Her] serious and repeated instances of misconduct and obfuscation clearly demonstrate that [she] has no regard for the [C]ourt's authority."  <u>For Life Prods.</u>, 2022 WL 1670097, at *9.  Considering

-25-

the extent and gravity of Plaintiff's "particular sort of non-compliance," Anderson, 155 F.3d at 504, the Court should select the strongest available sanction, i.e., dismissal, to meet "the need for deterrence," id. See Rangarajan, 262 F. Supp. 3d at 276 ("[D]ismissal of a case such as this, where a plaintiff's [misconduct] has seriously undermined the truth-seeking function of the [c]ourt, is appropriate 'not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent.'" (quoting National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 643 (1976))); see also Tesar, 2007 WL 2783386, at *9 ("[T]he [p]laintiff has demonstrated that dismissal is necessary so that he (as well as other litigants) may completely understand the full effect of his perjury.").

Lastly, the Fourth Circuit has framed the fourth (and final) factor the Court must consider before fixing sanctions under Federal Rule of Civil Procedure 37(c)(1) as "whether less drastic sanctions would have been effective." Anderson, 155 F.3d at 504. By failing to respond to the Sanctions Motion, Plaintiff "has not suggested any alternative sanctions that the [C]ourt may impose," For Life Prods., 2022 WL 1670097, at *10. For reasons discussed in relation to Anderson's prejudice factor, the Court should shift to Plaintiff the reasonable expenses, including attorneys' fees, Defendants incurred due to her misconduct; however, like a

-26-

neighboring court faced with analogous misconduct, the Court should conclude "that monetary sanctions would be insufficient to deter future discovery violations by [Plaintiff] given [her] willful nondisclosure and gamesmanship," Beach Mart, 784 F. App'x at 124 (internal quotation marks omitted); see also id. at 125 ("[G]iven the severity of [the plaintiff's] willful discovery abuses, we defer to the district court's determination that preclusive sanctions were a necessary deterrent."); For Life Prods., 2022 WL 1670097, at *10 (rejecting view that party who used fabricated evidence should "face no sanction at all other than to cover the costs incurred by an opposing party to uncover [the] fraud").

Nor should the Court refrain from dismissing this case because Plaintiff could "still ha[ve] meritorious claims, despite [her] use of fabricated evidence," For Life Prods., 2022 WL 1670097, at *10. For starters, "[s]triking the fabricated [documents] would hardly be punishment [for Plaintiff]," id., but "would foist considerable more expense on Defendants," Rangarajan, 262 F. Supp. 3d at 275. "To fully remedy [Plaintiff's discovery] violation[s], discovery would need to be reopened and . . . [she] would need to be re-deposed . . . ." Id. "Given the history of this litigation, were discovery to be reopened, the Court [could] ha[ve] little confidence [in] . . . Plaintiff's compliance with the rules of discovery." Id. at 275-76. Instead, based on the calculated and extended nature of her fraudulent behavior (starting with her

-27-

falsified initial disclosure, progressing to her perjured interrogatory responses and fabricated document production, and culminating in her perjured deposition testimony), the Court should conclude that "[s]he cannot be found to be credible on any factual issue and [s]he simply has no right to a trial on the merits," Tesar, 2007 WL 2783386, at *9 (internal quotation marks omitted).

To sum up (in regard to the fourth Anderson factor), "[s]hort of dismissal, there is not another remedy that would effectively address Plaintiff's violations[ of Federal Rule of Civil Procedure 26(a) and (e)]," Rangarajan, 262 F. Supp. 3d at 275; in fact, permitting this case to proceed under these circumstances "would be an open invitation to abuse the judicial process," Tesar, 2007 WL 2783386, at *9 (internal quotation marks omitted), as Plaintiff and other "[l]itigants would infer they have everything to gain, and nothing to lose, if manufactured evidence merely is excluded while their lawsuit continues," id. (internal quotation marks omitted); see also Beach Mart, 784 F. App'x at 125 ("Despite the general public policy in favor of deciding cases on the merits, preclusive sanctions may be necessary to preserve the integrity of the judicial process in order to retain confidence that the process works to uncover the truth." (emphasis and internal quotation marks omitted)); For Life Prods., 2022 WL 1670097, at *10 ("While the public has a strong interest in resolving disputes on the merits, it also has a significant interest in having its cases decided on

-28-

the law and facts, free of false, fabricated, or fraudulent evidence." (internal quotation marks omitted)).

All four <u>Anderson</u> factors thus point in the same direction: not only should the Court require Plaintiff to pay Defendants the reasonable expenses, including attorneys' fees, they incurred as a result of her misconduct during discovery, but the Court also should dismiss this action. Over two decades ago, another district court within the Fourth Circuit, when confronted with an eerily similar situation, used these words, which succinctly explain the necessity of dismissal in this case as well:

> [Plaintiff] has engaged in a comprehensive fraudulent scheme, including providing intentionally false deposition testimony and deliberately failing to meet [her] discovery obligations to hide evidence of obvious high relevance to h[er] claim for damages from Defendant[s]. The extent and nature of h[er] fraud goes beyond that which should be tolerated. In sum . . . [Defendants] ha[ve] established . . . that dismissal is the proper sanction to impose in the instant case.

<u>Yanez v. America W. Airlines, Inc.</u>, No. Civ. A. 03-1717, 2004 WL 2434725, at *7 (D. Md. Oct. 13, 2004) (unpublished); <u>see also</u> <u>For Life Prods.</u>, 2022 WL 1670097, at *11 ("The functioning of our justice system demands that litigants act with integrity and honesty. Abuse of the system distorts this court's ability to ensure fair and just outcomes and threatens the legitimacy of the entire enterprise . . . . [T]o ensure the integrity of the judicial process and to deter future parties from engaging in similarly egregious conduct, I find that the plaintiff's use of

-29-

fabricated evidence, along with its pattern of deceptive and misleading behavior in this case, warrants dismissal of its claims with prejudice.").[8]

The foregoing discussion leaves only the matter of the Withdrawal Motion. According to the Withdrawal Motion, "counsel [for Plaintiff] cannot continue to represent Plaintiff pursuant to Rule 1.16(b) of the North Carolina Rules of Professional Conduct." (Docket Entry 16 at 1.) That rule – which this Court has incorporated as part of its own "Code of Professional Responsibility," M.D.N.C. LR 83.10e(b) – recognizes nine different bases on which, with proper notice and required leave of court, see N.C.R. Prof'l Conduct 1.16(c), "a lawyer may withdraw from representing a client," N.C.R. Prof'l Conduct 1.16(b). See id.

The Withdrawal Motion does not specify which of those nine grounds applies in this case (see Docket Entry 16 at 1), but instead states that, "[d]ue to attorney-client privileged communications, '[Plaintiff's counsel's] statement that professional considerations require termination of the

_____

[8] Because analysis under Federal Rule of Civil Procedure 37(c)(1) supports the relief requested in the Sanctions Motion, the Court need not rely on its inherent power to sanction Plaintiff for her misconduct (as proposed in the Sanctions Brief as an alternative ground for such court action (see Docket Entry 22 at 13-19)). See generally Chambers v. NASCO, Inc., 501 U.S. 32, 50 (1991) ("[W]hen there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the [Federal] Rules [of Civil Procedure], the court ordinarily should rely on th[ose r]ules rather than the inherent power.").

-30-

representation ordinarily should be accepted as sufficient'" (id. (quoting N.C.R. Prof'l Conduct 1.16 comment (3))).  For reasons discussed in connection with the Sanctions Motion, the record establishes that Plaintiff personally has engaged in serious misconduct in the course of discovery.  As such, several of the provisions of the rule invoked by Plaintiff's counsel appear applicable.  See N.C.R. Prof'l Conduct 1.16(b)(3) ("[T]he client persists in a course of action involving the lawyer's services that the lawyer reasonably believes is criminal or fraudulent[.]"); N.C.R. Prof'l Conduct 1.16(b)(4) ("[T]he client insists upon taking action that the lawyer considers repugnant, imprudent, or contrary to the advice and judgment of the lawyer, or with which the lawyer has a fundamental disagreement[.]"); N.C.R. Prof'l Conduct 1.16(b)(5) ("[T]he client has used the lawyer's services to perpetrate a crime or fraud[.]"); N.C.R. Prof'l Conduct 1.16(b)(8) ("[T]he client insists upon presenting a claim or defense that is not warranted under existing law and cannot be supported by good faith argument for extension, modification, or reversal of existing law[.]"); N.C.R. Prof'l Conduct 1.16(b)(9) ("[O]ther good cause for withdrawal exists.").  Moreover (as the Introduction documents), despite personal notice of the Withdrawal Motion, Plaintiff did not respond in opposition; hence, "the [Withdrawal M]otion will be considered and decided as an uncontested motion, and ordinarily will be granted without further notice," M.D.N.C. LR 7.3(k).

-31-

Under the circumstances presented, the Court should relieve Plaintiff's counsel from continued representation of Plaintiff.

<u>CONCLUSION</u>

Plaintiff seriously abused the discovery process, warranting relief for her counsel from further responsibility for the litigation of this case, as well as monetary and case-dispositive sanctions against Plaintiff.

**IT IS THEREFORE RECOMMENDED** that the Withdrawal Motion (Docket Entry 16) be granted and that Plaintiff's counsel be terminated as counsel of record for Plaintiff.

**IT IS FURTHER RECOMMENDED** that the Sanctions Motion (Docket Entry 21) be granted, that Plaintiff be ordered to pay Defendants' reasonable attorneys' fees and costs attributable to Plaintiff's abusive conduct, and that this action be dismissed.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

April 14, 2026

-32-